UNITED STATES OF AMERICA
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

**PEDRE JEAN**
    Plaintiff,

v.   **COMPLAINT**

**DENIS MCDONOUGH, SECRETARY,**
**DEPARTMENT OF VETERANS AFFAIRS,**
    Defendant.

Plaintiff, Pedre Jean, by and through his attorney, Marc J. Levy, Esquire, respectfully alleges, upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff, an employee of the Department of Veterans Affairs brings this action in response to the discriminatory actions taken against him by the Department of Veterans Affairs.

2. Plaintiff brings this action pursuant Title VII of the Civil Rights Acts of 1964 ("Title VII").

## THE PARTIES

3. The plaintiff, Pedre Jean ("Plaintiff" or "Jean"), is a resident of Massachusetts who resides at 48 Galen Street, Brockton, Plymouth County, Massachusetts. At all times relevant to this charge, Jean was (and still is) an employee of the Department of

1

Veterans Affairs ("Defendant" or "VA") as that term is defined by Title VII.

4. Defendant VA at all times hereinafter mentioned, was and is an agency within the Federal Government with a facility located at 940 Belmont Street, Brockton, Massachusetts. Denis McDonough is the current Secretary of the Department of Veterans Affairs. At all times relevant to this charge, the VA was (and still is) Jean's "employer" as that term is defined by Title VII.

## JURISDICTION AND VENUE

5. The Court has original jurisdiction over Plaintiff's federal law claim pursuant to 28 U.S.C. §§ 1331 & 1343.

6. Venue is proper pursuant to 28 U.S.C. § 1391.

7. The jurisdictional prerequisites of 29 C.F.R. Part 1614 have been satisfied. Jean, as required by law, originally filed an ORM/EEO Complaint with the VA's Office of Resolution Management. That Complainant is identified as Agency No. 200H-0523-2018106234; EEOC No. 520-2019-00502X.

8. On December 14, 2020 the Agency issued a Final Order on his ORM/EEO Complaint.

9. Jean is afforded the right to file a complaint with the United States District Court within 90 days of an Agency Final Order on his ORM/EEO Complaint.

10. Where this Complaint has been filed within 90 days of the Agency's Final Order, the administrative requirements have been met and it is timely.

## FACTS

1. The Plaintiff, Pedre Jean, is of Hatian descent. He identifies as black. His religion is Seventh Day Adventist.

2. The Brockton VA Medical Center in Brockton, Massachusetts (the "Hospital") is part of the Boston VA Healthcare System. It provides a variety of health services to Veterans including short-term rehabilitation, medical care, palliative and hospice care, long-term care, a chronic Spinal Cord Injury unit, mental health services, comprehensive primary care and a Domiciliary for Homeless Veterans.

3. Since approximately 2015 Jean has held the position of Registered Nurse at the Hospital.

4. On or about May 27, 2018 Jean was promoted to Assistant Nurse Manager on Unit 42B.

5. Donna Simono, RN, at all times relevant to this matter was a Nurse Manager at the Hospital. On or about July 16, 2018, Simono was detailed to Acting Nurse Manager on Unit 42B and thus became Jean's immediate supervisor. Ms. Simono is Caucasian.

6. For approximately three years Jean had no problems in his employment, was liked by his peers, colleagues, and supervisors, and his career was on an upward path.

7. Jean's work experience dramatically changed upon Simono's arrival as Acting Nurse Manager on Unit 42B.

8. From the start of her role at Acting Nurse Manager on Unit 42B, Simono targeted, undermined, micromanaged, minimalized, marginalized, and discriminated against

Jean based on his ethnicity, race and religion.

9. From the outset of her arrival on Unit 42B Simono stripped Jean of many of his management responsibilities and relegated him to staff RN duties and status. Specifically, Simono stripped Jean of scheduling responsibilities, advised him to attend nurse trainings when he was supposed to be in orientation to be a Nurse Manager, scheduled him work night shifts when there was no Nurse Manager on duty from whom he was supposed to be learning, ordered him not to speak during staff meetings, and refused to recognize him as part of nurse management during a Conference,

10. Prior to Simono's arrival on Unit 42B, Jean's religious beliefs as a Seventh Day Adventist had been accommodated and he was never asked or required to work from sundown Friday to sundown Saturday. This accommodation was in place for three years.

11. Prior to Simono's arrival on Unit 42B Jean had requested and was approved for vacation for the week of July 29, 2018 to August 5, 2018.

12. Approval for this vacation was confirmed by Jean with the prior Nurse Manager, Gilda Cain, following his transfer to Unit 42B on May 27, 2018 and prior to Simono's detail to the unit as Acting Nurse Manager.

13. Prior to Simono's arrival on the Unit 42B, Jean had been told by management that during his orientation into the Assistant Nurse Manager position his schedule would be Monday to Friday, days only, as he was in orientation still and was to learn from the Nurse Manager directly who was his preceptor.

14. Despite being accommodated for years, immediately upon her arrival onto unit 42B

in July 2018, Simono scheduled Jean to work between sundown Friday and sundown Saturday.

15. When advised that this schedule violated his religious beliefs and the accommodation the Agency had been making for them for years, Simono's immediate reaction was to believe Jean was lying to her.

16. Simomo subsequently interrogated Jean about his religious beliefs in an attempt to ascertain the veracity of his claims and evidencing her disbelief of his assertions. As part of that interrogation, Simono stated to Jean, "I know who hired you. I will find out." evidencing her disbelief of his religious beliefs and existing accommodation. Moreover, Simono stated to Jean that "You are in the wrong field. You need to be flexible."

17. Still not believing Jean, Simono felt compelled to obtain concurrence of the accommodation from the prior Nurse Manager, Gilda Cain. Ms. Cain corroborated that she had been accommodating Jean's religious beliefs.

18. On July 25, 2018, four days before it was to begin, after it had approved and reaffirmed by VA management, and after it had been fully paid for and planned by his family, Simono handed Jean a note informing him that his vacation could not be accommodated. Cancelation of his vacation so close in proximity to its scheduled date violated VA regulations.

19. Despite being in orientation, despite being told that during orientation he was specifically to learn from the Nurse Manager, despite being told that the schedule for the Assistant Nurse Manager position was Monday through Friday, days only, despite never having worked an overnight shift before, and immediately following

5

the scheduling situations involving both his religious beliefs and his vacation, Jean was suddenly scheduled by Simono to work multiple overnight shifts as the sole RN on the unit the weeks of August 5, 2018 and August 12, 2018.

20. Specifically, for the week immediately following the vacation which she attempted to take away, Simono scheduled Jean to work as follows:  Sunday August 5, 2018 – 3:30 pm to midnight; Tuesday, August 7, 2018 – 11:45 pm to 7:45 am; Wednesday, August 8, 2018 – 11:45 pm to 7:45 am, Thursday, August 9, 2018 – 3:30 pm to midnight and Friday, August 10, 2018 – 12:00 pm to 8:00 pm.

21. At the time Simono made this scheduling decision, she knew Jean had a wife who was also a nurse who worked nights and that they had small children at home. When reminded of this, Simono informed Jean that his wife was going to have to figure it out.

22. At the time Simono made this scheduling decision, she knew Jean was scheduled to be on vacation on August 5, 2018, yet she scheduled him to work anyway.  In doing so, Simono forced Jean to find his own coverage for the day of August 5, 2018 or risk being marked AWOL.

23. At the time Jean was scheduled to work as the sole RN on duty during several overnight shifts the week of August 5, 2018 and August 12, 2018, Jean had never worked as a night nurse once during his entire career at the VA.

24. At the time Jean was scheduled to work as the sole RN on duty during several overnight shifts the week of August 5, 2018 and August 12, 2018, Simono could have easily asked for a night nurse, or two, from another unit to float to Unit 42B to cover any staffing issues.

25. Patient safety was clearly not Simono's top consideration when making the staffing decision to have Jean as the sole RN on multiple overnight shifts the weeks of August 5, 2018 and August 12, 2018.

26. There is no regularly scheduled shift that runs from 12:00 pm to 8:00 pm at the Hospital or on Unit 42B.

27. In scheduling Jean to work an irregular tour of 12:00 pm to 8:00 pm on Friday August 10, 2018, Simono was again displaying her disbelief of the sincerity of Jean's religious beliefs by creating a schedule that had him working right up to the last possible moment before sunset while not technically violating his known accommodation. There was no legitimate staffing need for Simono to create this schedule for Jean on this Friday or any Friday.

28. In posting a schedule which consisted of shifts starting on one day and ending on another, Simono was unclear as to which day the shift started and which day the shift ended. This was especially true for someone who had never worked nights before.

29. Specifically, Simono posted a schedule with read August 7, 2018 – 11:45 pm to 7:45 am. Seeing this scheduled, Jean believed he was scheduled to start the shift at 11:45 PM on the night of August 7, 2018. Apparently in writing the schedule this way Simono expected Jean to know that the shift began on the night of August 6, 2018 and ended on the morning of August 7, 2018.

30. As a result Jean inadvertently did not show up for the scheduled shift on August 6, 2018 as he believed he was scheduled to work the following night.

31. Despite having the ability to recognize the confusion caused by her schedule,

Simono marked Jean AWOL for the shift resulting in a loss of pay and setting Jean up for discipline.

32. Less than two months after her arrival on Unit 42B as the Acting Nurse Manager, Simono, on her own volition and without the normal Human Resource involvement, on September 7, 2018, informed Jean during a meeting that he was being taken out of his Assistant Nurse Manager position and reassigned to a staff nurse role.

33. During this highly unusual meeting, Jean 1) was presented no formal paperwork indicating that Human Resources was involved; 2) was ordered to return his key immediately[1] even though he was not being fired but "reassigned" according to the Agency; and 3) was not given time to clean out his office even though he was not being fired but "reassigned" according to the Agency; 4) was threatened with police involvement[2] even though he was not being fired but "reassigned" according to the Agency.

34. This demotion was subsequently put into writing by Human Resources on September 13, 2018 with an effective date September 16, 2018.

35. While the Agency classifies this as a reassignment, it is in every respect a demotion as a return to a Staff Nurse position brings with it the loss of several steps in pay that come with being in a Nurse Management position.

36. Demotion back to a Staff Nurse position also has devastating effects with regard to

---

1 Simono's desire for the key was due to the fact the key opened the Manager's Office and thus stemmed not from any Agency policy or need for the key, but her personal belief, previously stated to Gilda Cain, that men from jean's culture were known to be aggressive.  This is also consistent with the threat of police involvement during her meeting and the subsequent police involvement on that day which occurred.
2 A VA police officer and canine "just happened" to be in the vicinity at the time of the meeting.  The plaintiff believes the evidence will show that Simono called the VA police in advance of her meeting.

Jean's career advancement at Hospital.

37. As further evidence of Simono's discriminatory animus torwards Jean, during this period Simono commented to Gilda Cain that "men of his [Jean's] culture have a tendency to be aggressive."

### FIRST CLAIM FOR RELIEF
(RACE//ETHNICITY/RELIGIOUS DISCRIMINATION - DEMOTION)

38. Plaintiff repeats and re-alleges each and every allegation contained herein.

39. Plaintiff has been discriminated against by the Defendant on the basis of his race, ethnicity and religion in violation of Title VII in that the Defendant unjustly, and with a discriminatory animus, demoted the Plaintiff from the position of Assistant Nurse Manager to Staff Nurse on or about September 16, 2018.

### SECOND CLAIM FOR RELIEF
(HOSTILE WORK ENVIRONMENT BASED ON RACE, ETHNICITY AND RELIGION)

40. Plaintiff repeats and re-alleges each and every allegation contained herein.

41. Plaintiff was subjected to a hostile work environment by Defendant based on his religion, race and ethnicity as stated above, in violation of Title VII.

**WHEREFORE,** the Plaintiff demands the following relief:

a. That this Court enter judgment for the Plaintiff against the Defendant for all compensatory, emotional and psychological damages, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action in an amount to be determined by a jury;

b.  That this Court award the Plaintiff all costs and expenses associated with this lawsuit;

c.  That this Court award the Plaintiff all attorney fees associated with this lawsuit;

d.  That this Court award the Plaintiff interest on any and all judgments awarded in this lawsuit; and

e.  For all other relief as this Court deems meet and just.

**The Plaintiff demands a jury trial on all issues triable by a jury.**

                                                         Respectfully Submitted,
The Plaintiff,
Pedre Jean
By his attorney,

*/s/ Marc J. Levy*
Marc J. Levy, Esquire
Marc J. Levy, Esquire LLC
215 Boston Post Road, Building B
Sudbury, MA 01776
Tel:  508-359-8600
Fax:  508-359-8601
Email:  marclevy@marclevyesq.com
Dated: 02/22/21                              B.B.O. #644826